SYLLABUS

(This syllabus is not part of the opinion of the Court.  It has been prepared by the Office of the Clerk for the convenience of the reader.  It has been neither reviewed nor approved by the Supreme Court.  Please note that, in the interest of brevity, portions of any opinion may not have been summarized).

**State v. Al-Sharif Scriven** (A-11-15) (075682)

**Argued April 26, 2016 -- Decided July 20, 2016**

**ALBIN, J., writing for a unanimous Court.**

In this appeal, the Court considers the circumstances under which the high-beam statute, N.J.S.A. 39:3-60, justifies a police stop of a vehicle.

On November 3, 2013, at approximately 3:00 a.m., Essex County Sheriff's Officer David Cohen and his partner, Officer Eric Overheely, observed an unoccupied vehicle "with a fictitious temp tag" located on the left side of Adams Street in the City of Newark.  Adams is a one-way street, which runs parallel to Independence Park and forms a "T" intersection with New York Avenue.  Traffic flowing on New York Avenue toward the park must turn left onto Adams Street.  Officer Cohen double-parked his patrol car immediately behind the unoccupied vehicle to investigate.  He kept his headlights on but did not activate his overhead lights.  After determining that the vehicle was unregistered, he called for a tow truck.

While waiting on foot for the tow truck to arrive, Officer Cohen observed a vehicle on New York Avenue approaching from about a quarter-mile away.  The vehicle was traveling with its high beams on at a normal speed in this well-lit residential area.  The vehicle obeyed the stop sign at the intersection of New York Avenue and Adams Street.  Using the strobe light attachment on his flashlight, Officer Cohen signaled to the driver to pull over, and the driver did so, turning left onto Adams street.  Officer Cohen intended to educate the driver on the proper use of high beams.  In the officer's experience, stolen cars are often driven with high beams, and the blinding light takes away his tactical advantage to see inside a car and know whether guns are pointed at him.

As Officer Cohen approached the driver's side of the vehicle, he did not give the driver a warning to turn off her high beams, but instead instructed her to produce her license, registration, and insurance cards.  With the driver's side window down, Officer Cohen could smell burnt marijuana.  He then walked around the vehicle, asked defendant, the front passenger, to roll down the window, and detected a stronger odor of burnt marijuana.  Officer Cohen asked defendant and the rear passenger whether they had any "CDS" (controlled dangerous substance) on them, and both replied, "No."  While engaged in this exchange, Officer Cohen noticed inside the vehicle a hollowed-out cigar, which, from his experience and training, he knew was used as a receptacle for marijuana.  Based on this observation, Officer Cohen told defendant to step out of the car.  In response, defendant indicated that he had a gun under his jacket.  The officer ordered defendant to keep his hands up while he retrieved the weapon.  Defendant was placed under arrest, and the driver was later issued a ticket for a violation of the high-beam statute.

Defendant was charged with unlawful possession of a .40 caliber handgun, receiving stolen property (the handgun), possession of hollow-nose bullets, and possession of a large-capacity magazine.  Defendant filed a motion to suppress the handgun, the bullets, and the magazine on the ground that the police did not have a constitutionally permissible basis for stopping the car in which he was a passenger.  The court granted the motion because the automobile stop violated the Fourth Amendment and Article I, Paragraph 7 of the New Jersey Constitution.  The court observed that the high-beam statute presupposes that the offending driver's high beams are on when his vehicle approaches an oncoming vehicle.  Here, Officer Cohen testified without equivocation that he did not observe any other vehicle traveling in the opposite direction toward defendant's vehicle.  Therefore, the court reasoned that, in the absence of a violation of the high-beam statute, Office Cohen did not have a reasonable and articulable suspicion to justify a motor-vehicle stop.  The court also concluded that the stop could not be justified based on the community-caretaking exception to the warrant requirement because the operation of the vehicle did not suggest that the driver was impaired or in need of police assistance.

The Appellate Division granted the State's motion for leave to appeal and, in an unpublished opinion, affirmed the trial court's suppression order.  Like the trial court, the appellate panel found that Officer Cohen did not have an objectively reasonable basis to believe that the operator of the subject car violated the high-beam statute because there were no oncoming vehicles approaching it.  In light of the unambiguous language of the statute, the panel rejected the argument that Officer Cohen made a good faith mistake of law that allowed for the denial of the suppression motion.  The panel also asserted that the community-caretaking doctrine did not apply because the

1

record contains no proof that operation of the vehicle otherwise presented a traffic safety hazard or endangered the safety and welfare of defendant, the officer, or others on the road at the time. The Court granted the State's motion for leave to appeal. 223 N.J. 551 (2015).

**HELD:** The trial court and Appellate Division properly concluded that the motor-vehicle stop violated the Federal and State Constitutions. The language of the high-beam statute, N.J.S.A. 39:3-60, is unambiguous; drivers are required to dim their high beams only when approaching an oncoming vehicle. Neither a car parked on a perpendicular street nor an on-foot police officer count as an oncoming vehicle. The judgment of the Appellate Division upholding the trial court's suppression of the evidence is affirmed.

1. The Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution provide that the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. A motor-vehicle stop by the police constitutes a seizure of persons within the meaning of those provisions. Under both provisions, a police officer must have a reasonable and articulable suspicion that the driver of a vehicle, or its occupants, is committing a motor-vehicle violation or a criminal or disorderly persons offense to justify a stop. The heart of this constitutional analysis is whether the motor-vehicle stop was unreasonable, recognizing that raw, inchoate suspicion grounded in speculation cannot be the basis for a valid stop. (pp. 12-13).

2. The State argues that the driver of the car in which defendant was traveling was violating the high-beam statute, thus justifying the motor-vehicle stop. The language of the high-beam statute requires a driver to dim his or her vehicle's high beams when approaching an oncoming vehicle. The plain language of a statute is the best indicator of its meaning. The word "oncoming" is consistently defined as "coming nearer," "nearing," "approaching," and "moving forward upon one." An "oncoming vehicle" and "oncoming driver" cannot mean an unoccupied vehicle, parked on a perpendicular roadway, whose driver and passenger are standing in the street, even if the unoccupied vehicle's motor is running and its headlights are on. Accordingly, the driver of the subject car was not in violation of the high-beam statute. The statute is unambiguous in its language and meaning to both the public and the police. Officer Cohen, who was on foot waiting for a tow truck, was not an "oncoming vehicle" or "oncoming driver" to the car approaching him from New York Avenue. Further, because Officer Cohen did not have a reasonable and articulable suspicion to believe that the subject car was operating in violation of the statute, the Court need not address the issue dealt with in Heien v. North Carolina, __ U.S. __, 135 S. Ct. 530, 190 L. Ed. 2d 475 (2014). In Heien, the United States Supreme Court held that, under the Fourth Amendment, the requisite suspicion necessary for the police to make a stop for a motor-vehicle violation may be based on an objectively reasonable mistake of law. Here, however, because Officer Cohen's mistake of law was not objectively reasonable, Heien is inapplicable. (pp. 13-19)

3. The State alternatively argues that Officer Cohen had a justifiable basis for stopping the subject car under the community-caretaking exception to the warrant requirement of the Fourth Amendment and Article I, Paragraph 7 of our State Constitution. The community-caretaking doctrine recognizes that police officers provide a wide range of social services outside of their traditional law enforcement and criminal investigatory roles. Police officers who have an objectively reasonable basis to believe that a driver may be impaired or suffering a medical emergency may stop the vehicle for the purpose of making a welfare check and rendering aid, if necessary. The police do not have to wait until harm is caused to the driver or a pedestrian or other motorist before acting. The evidence here – according to the trial court – did not suggest that the driver of the car was impaired or that the vehicle had a problem. A police officer conducting an investigation on the street can ask and even instruct a driver to dim high beams if the brightness of the lights is obstructing or impairing the officer's ability to perform certain tasks. Here, however, Officer Cohen did not signal to the driver to dim her high beams because they were interfering with his mission, which was waiting for a tow truck to take away an unregistered vehicle. Rather, he effectuated a motor-vehicle stop under the objectively unreasonable belief that the driver was in violation of the high-beam statute. The motor-vehicle stop was not justified. The subsequent seizure of the handgun, hollow-nose bullets, and large-capacity magazine were the fruits of a violation of the Fourth Amendment and its state constitutional counterpart. The court properly suppressed the evidence. (pp. 20-23)

The judgment of the Appellate Division is **AFFIRMED.**

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, and SOLOMON join in JUSTICE ALBIN'S opinion. JUDGE CUFF (temporarily assigned) did not participate.**

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

       v.

AL-SHARIF SCRIVEN,

    Defendant-Respondent.

Argued April 26, 2016 – Decided July 20, 2016

On appeal from the Superior Court, Appellate Division.

Frank J. Ducoat, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for appellant (Carolyn A. Murray, Acting Essex County Prosecutor, attorney).

Alison S. Perrone, Designated Counsel, argued the cause for respondent (Joseph E. Krakora, Public Defender, attorney).

Claudia Joy Demitro, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (Robert Lougy, Acting Attorney General, attorney).

    JUSTICE ALBIN delivered the opinion of the Court.

    In this appeal, we must determine whether a purported violation of the high-beam statute, N.J.S.A. 39:3-60, justified a police stop of a vehicle.  The high-beam statute mandates that a driver dim a vehicle's high beams when approaching "an oncoming vehicle."  Ibid.

1

Here, a police officer stopped a car traveling on a street with its high beams on, even though that car was not approaching an oncoming vehicle. At the time, the officer was on foot and his car was parked on a perpendicular street, where he was investigating an abandoned car. After stopping the vehicle, the officer questioned defendant Al-Sharif Scriven, who was sitting in the front passenger seat. The questioning led to the discovery of a handgun possessed by defendant, who claims that the unconstitutional motor-vehicle stop requires suppression of the handgun.

The trial court found that because the subject car, whose high beams were activated, was traveling on a street with no oncoming vehicles, the driver was in compliance with N.J.S.A. 39:3-60. On that basis, the court found that the police did not have a reasonable and articulable suspicion to stop the car for a motor-vehicle violation or for a community-caretaking purpose. Accordingly, the court concluded that the stop violated the Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution and suppressed the handgun, hollow-nose bullets, and the gun's large-capacity magazine. The Appellate Division affirmed.

We hold that the trial court and Appellate Division properly concluded that the motor-vehicle stop violated the Federal and State Constitutions. The language of the high-beam

2

statute, N.J.S.A. 39:3-60, is unambiguous; drivers are required to dim their high beams only when approaching an oncoming vehicle. Neither a car parked on a perpendicular street nor an on-foot police officer count as an oncoming vehicle. This case does not involve a reasonable mistake of law by a police officer. We therefore need not address whether such a reasonable mistake would require suppression of evidence under the New Jersey Constitution. Because the officer did not have a reasonable and articulable suspicion or a community-caretaking basis to stop the vehicle in which defendant was a passenger, we affirm the judgment of the Appellate Division upholding the trial court's suppression of the evidence.

I.

A.

Defendant Al-Sharif Scriven was charged in an Essex County indictment with (1) second-degree unlawful possession of a .40 caliber handgun, N.J.S.A. 2C:39-5(b); (2) third-degree receiving stolen property (the handgun), N.J.S.A. 2C:20-7; (3) fourth-degree possession of hollow-nose bullets, N.J.S.A. 2C:39-3(f); and (4) fourth-degree possession of a large-capacity magazine, N.J.S.A. 2C:39-3(j).

Defendant filed a motion to suppress the handgun, the hollow-nose bullets, and the large-capacity magazine on the ground that the police did not have a constitutionally

3

permissible basis for stopping the car in which he was a passenger.  At a suppression hearing, the State called Essex County Sheriff's Officer David Cohen, the only witness to testify.  The record before us is based solely on Officer Cohen's testimony.

B.

On November 3, 2013, at approximately 3:00 a.m., Officer Cohen and his partner, Officer Eric Overheely, observed an unoccupied vehicle "with a fictitious temp tag" located on the left side of Adams Street (a one-way street), which runs parallel to Independence Park in the City of Newark.  At that location, Adams Street forms a "T" intersection with New York Avenue.  Traffic flowing on New York Avenue toward the park must turn left onto Adams Street.

Officer Cohen double-parked his patrol car immediately behind the unoccupied vehicle to investigate.  He kept his headlights on but did not activate his overhead lights.  After determining that the vehicle was unregistered, he called for a tow truck.  While waiting for the tow truck, Officer Cohen observed a vehicle on New York Avenue approaching him from about a quarter-mile away.  The vehicle was traveling with its high beams on at a normal speed in this well-lit residential area. The vehicle obeyed the stop sign at the intersection of New York Avenue and Adams Street.  No other vehicles were operating on

4

either street at the time.

Officer Cohen stated that the high beams were blinding both him and his partner.  Using the strobe light attachment on his flashlight, Officer Cohen signaled to the driver to pull over, and the driver did so, turning left onto Adams Street.  Officer Cohen testified that he intended to educate the driver on the proper use of high beams -- that is, to tell her "you can't drive with your high beams on."  He indicated that the use of high beams "always sends up a red flag."  In his experience, stolen cars have been driven with high beams, and the blinding light takes away his tactical advantage to see inside a car and to know whether guns are pointed at him.

As Officer Cohen approached the driver's side of the vehicle, he did not give the driver a simple warning to turn her high beams off, but instead instructed her to produce her license, registration, and insurance cards.  At this point, with the driver's window down, he could smell burnt marijuana.  He then walked around the vehicle, asked defendant, the front passenger, to roll down the window, and detected a stronger odor of burnt marijuana.  Officer Cohen asked defendant and the rear passenger whether they had any "CDS" on them, and both replied, "No."  While engaged in this exchange, Officer Cohen noticed inside the vehicle a hollowed-out cigar, which, from his experience and training, he knew was used as a receptacle for

marijuana.

Based on this observation, Officer Cohen told defendant to step out of the car.  In response, defendant indicated that he had a gun under his jacket.  The officer then ordered defendant to keep his hands up while he retrieved the weapon.  Defendant was placed under arrest, and the driver was later issued a ticket for a violation of the high-beam statute.

C.

The trial court granted the motion to suppress because the automobile stop violated the Fourth Amendment and Article I, Paragraph 7 of the New Jersey Constitution.  The court observed that the high-beam statute, N.J.S.A. 39:3-60, "presupposes that the offending driver's high beams [are] on when his vehicle approaches an oncoming vehicle," quoting State v. Witt, 435 N.J. Super. 608, 615 (App. Div. 2014), aff'd in part and rev'd in part, 223 N.J. 409 (2015).  It noted that Officer Cohen "testified without equivocation that he did not . . . observe any other vehicle traveling [in] the opposite direction towards [defendant's] vehicle."  The court reasoned that in the absence of a violation of the high-beam statute, Officer Cohen did not have a reasonable and articulable suspicion to justify a motor-vehicle stop, citing Delaware v. Prouse, 440 U.S. 648, 663, 99 S. Ct. 1391, 1401, 59 L. Ed. 2d 660, 673 (1979).  It also concluded that the stop could not be justified based on the

6

community-caretaking exception to the warrant requirement because the operation of the vehicle did not suggest that the driver was impaired or in need of police assistance. Crediting Officer Cohen's testimony, the court nonetheless found the motor-vehicle stop unconstitutional and the seizure of the weapon and its accoutrements the fruits of that invalid stop.

D.

The Appellate Division granted the State's motion for leave to appeal and, in an unpublished opinion, affirmed the trial court's suppression order. The appellate panel concluded that there was no valid basis to stop the vehicle for violating the high-beam statute, N.J.S.A. 39:3-60, or for any purpose under the narrowly tailored community-caretaking doctrine.

Like the trial court, the appellate panel found that Officer Cohen did not have an objectively reasonable basis to believe that the operator of the subject car violated the high-beam statute because there were no oncoming vehicles approaching it. In light of the clear and unambiguous language of N.J.S.A. 39:3-60, the panel rejected the argument that Officer Cohen made a good faith mistake of law that allowed for the denial of the suppression motion under Heien v. North Carolina, __ U.S. __, 135 S. Ct. 530, 190 L. Ed. 2d 475 (2014). The panel noted, moreover, that New Jersey does not recognize a good faith exception to the exclusionary rule, citing State v. Puzio, 379

7

N.J. Super. 378, 383 (App. Div. 2005) (citing State v. Novembrino, 105 N.J. 95, 157-58 (1987)).

Additionally, the panel asserted that the community-caretaking doctrine did not apply because "the record contains no proof that operation of the vehicle otherwise presented a traffic safety hazard or endangered the safety and welfare of defendant, the officer, or others on the road at the time."

We granted the State's motion for leave to appeal. State v. Scriven, 223 N.J. 551 (2015). We also granted the request of the Attorney General of New Jersey to participate as amicus curiae.

## II.

### A.

The State presents two primary arguments. The first is that Officer Cohen had "a reasonable, articulable, and objective basis to believe" that the driver of the subject car was violating the high-beam statute. The State posits that it was reasonable for Officer Cohen to believe that his patrol vehicle, which was parked on a street perpendicular to the advancing car, was an "oncoming" vehicle for purposes of the high-beam statute, even while he and his partner were standing in the street. The State cites to Heien for the proposition that, at most, Officer Cohen made an objectively reasonable mistake of law, which nonetheless gave him reasonable suspicion to stop the car in

8

conformity with the Fourth Amendment.

The State's second argument is that, by stopping the subject car, Officer Cohen was performing a "community-caretaking role by informing the driver that her high beams were on" and to dim them because they were creating a traffic-safety hazard. From that perspective, the State submits that the officer acted in a constitutionally reasonable manner to address a dangerous situation.

### B.

Amicus curiae, the Attorney General, elaborates on the arguments advanced by the State. According to the Attorney General, Officer Cohen had reasonable suspicion to believe that the driver was engaged not only in a motor-vehicle violation, but also in criminal wrongdoing, and therefore had a constitutional basis to make the stop. To support this premise, the Attorney General refers to Officer Cohen's testimony that operators of stolen cars drive with high beams on and that, due to the blinding light of the high beams, he could not tell if the car's occupants had guns pointed at him and his partner. The Attorney General also asks this Court to rest its decision on Heien, maintaining that, even if Officer Cohen was mistaken in his interpretation of the high-beam statute and in his suspicion that criminal activity was afoot, the motor-vehicle "stop was still lawful because it was based on an objectively

9

reasonable mistake of law."

Last, the Attorney General asserts that Officer Cohen was justified in making the stop based on the community-caretaking doctrine because "something could have been wrong with the driver," the blinding high-beam lights presented a safety hazard to the officers and other potential drivers, and the driver may have been attempting to obscure the view of the license plate of a stolen car.

C.

Defendant urges the Court to give effect to the plain language of the high-beam statute and conclude that a parked car on a perpendicular street is not an "oncoming" vehicle. According to defendant, the State's characterization of the police vehicle as "operational" or "actively engaged in a motor vehicle investigation" does not convert a parked, unoccupied vehicle into an "oncoming" one for purposes of the statute. Defendant asserts that Officer Cohen's clearly erroneous understanding of an unambiguous statute cannot be viewed as an objectively reasonable mistake of law. For that reason, defendant explains that Heien is not applicable. Defendant, however, argues that Heien's holding that a reasonable mistake of law does not render a motor-vehicle stop unreasonable for Fourth Amendment purposes is inconsistent with the greater protection of rights accorded by the New Jersey Constitution.

10

To that end, defendant relies on Puzio, supra, 379 N.J. Super. at 381-83, in which the Appellate Division concluded that "an entirely erroneous reading of [a] statute" cannot provide probable cause to justify a motor-vehicle stop. Defendant submits, moreover, that despite Officer Cohen's speculation about the nefarious reasons why a driver might use high beams, the most obvious reason for doing so at 3:30 a.m. is to illuminate the roadway, even in an area with streetlights.

In addition, defendant stresses that the community-caretaking doctrine is inapplicable because the use of high beams by a driver operating a car at a normal rate of speed and in an ordinary way at 3:30 a.m. does not suggest that the driver is impaired or engaged in wrongdoing or unsafe driving. In short, he maintains that the use of high beams was not unusual or suspicious enough to justify a constitutional stop under the community-caretaking doctrine.

III.

A.

Our standard of review requires that we accord deference to the factual findings of the trial court, which had the opportunity to hear and see the sole witness at the suppression hearing and to evaluate the credibility of his testimony. See State v. Elders, 192 N.J. 224, 244 (2007). Accordingly, we must respect factual findings that are "supported by sufficient

11

credible evidence" at the suppression hearing, even if we would have made contrary findings had we sat as the motion court. Id. at 243-44 (quoting State v. Elders, 386 N.J. Super. 208, 228 (App. Div. 2006), aff'd in part and rev'd in part, 192 N.J. 224 (2007)). Thus, "[a] trial court's findings should be disturbed only if they are so clearly mistaken 'that the interests of justice demand intervention and correction.'" Id. at 244 (quoting State v. Johnson, 42 N.J. 146, 162 (1964)). In contrast, our interpretation of a statute is de novo, and we need not defer to a trial or appellate court's interpretative analysis, unless the analysis persuades us. See Murray v. Plainfield Rescue Squad, 210 N.J. 581, 584 (2012); cf. Morgan v. Sanford Brown Inst., __ N.J. __, __ (slip op. at 14) (2016).

B.

The Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution provide that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7.[1] A motor-vehicle stop by the police, however

---

[1] The Fourth Amendment reads in full:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but

12

brief or limited, constitutes a "'seizure' of 'persons'" within the meaning of those provisions. State v. Dickey, 152 N.J. 468, 475 (1998) (quoting Whren v. United States, 517 U.S. 806, 809-10, 116 S. Ct. 1769, 1772, 135 L. Ed. 2d 89, 95 (1996)). Under both the Fourth Amendment and Article I, Paragraph 7, ordinarily, a police officer must have a reasonable and articulable suspicion that the driver of a vehicle, or its occupants, is committing a motor-vehicle violation or a criminal or disorderly persons offense to justify a stop. State v. Locurto, 157 N.J. 463, 470 (1999). The heart of our constitutional analysis is whether the motor-vehicle stop in this case was unreasonable, recognizing that raw, inchoate suspicion grounded in speculation cannot be the basis for a valid stop. See State v. Stovall, 170 N.J. 346, 357 (2002).

The State's primary argument is that the driver of the car in which defendant was traveling was violating the high-beam statute, thus justifying the motor-vehicle stop. We therefore look to the language of the high-beam statute, N.J.S.A. 39:3-60,

---

upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

[U.S. Const. amend IV.]

The language of Article I, Paragraph 7 of our State Constitution is almost identical. See N.J. Const. art. I, ¶ 7.

13

which states:

> Every person driving a motor vehicle equipped with multiple-beam road lighting equipment, during the times when lighted lamps are required, shall use a distribution of light, or composite beam, directed high enough and of sufficient intensity to reveal persons and vehicles at a safe distance in advance of the vehicle, subject to the following requirements and limitations: <u>whenever the driver of a vehicle approaches an oncoming vehicle within five hundred feet, such driver shall use a distribution of light or composite beam so aimed that the glaring rays are not projected into the eyes of the oncoming driver</u>, and in no case shall the high-intensity portion which is projected to the left of the prolongation of the extreme left side of the vehicle be aimed higher than the center of the lamp from which it comes at a distance of twenty-five feet ahead, and in no case higher than a level of forty-two inches above the level upon which the vehicle stands at a distance of seventy-five feet ahead.

> [(Emphasis added).]

Because the parties contest the meaning of an "oncoming vehicle" and "oncoming driver," we must engage in an interpretative analysis of <u>N.J.S.A.</u> 39:3-60. The plain language of a statute is the best indicator of the statute's meaning, and statutory words should be read as they are commonly used and ordinarily understood. <u>DiProspero v. Penn</u>, 183 <u>N.J.</u> 477, 492 (2005). The Legislature, presumably, writes motor-vehicle laws in language that can be easily grasped by the public so that every motorist can obey the rules of the road. "It is not our

14

function to rewrite a plainly written statute or to presume that the Legislature meant something other than what it conveyed in its clearly expressed language." Murray, supra, 210 N.J. at 592 (quoting DiProspero, supra, 183 N.J. at 492).

With those principles in mind, we can say that the high-beam statute is a clearly written, straightforward statute. It requires a driver to dim a vehicle's high beams whenever he or she "approaches an oncoming vehicle within five hundred feet" so that "the glaring rays [of the high beams] are not projected into the eyes of the oncoming driver." N.J.S.A. 39:3-60.

The word "oncoming" is consistently defined as "coming nearer," "nearing," "approaching," and "moving forward upon one." See, e.g., American Heritage College Dictionary 971 (4th ed. 2002) (defining "oncoming" as "[c]oming nearer" or "approaching"); New Oxford American Dictionary 1188 (2d ed. 2005) (defining "oncoming" as "approaching," or "moving toward"); Webster's Third New International Dictionary 1575 (1981) (defining "oncoming" as "coming nearer in space or time," "moving forward upon one," or "approaching").

Those dictionary definitions explain the word "oncoming" in a way that an ordinary, everyday driver -- and police officer -- can comprehend. Understood in that light, an "oncoming vehicle" and "oncoming driver" cannot mean an unoccupied vehicle, parked on a perpendicular roadway, whose driver and passenger are

15

standing in the street.  That is so even if the unoccupied vehicle's motor is running and its headlights are on.  Officer Cohen, who was on foot waiting for a tow truck to remove an unregistered vehicle on Adams Street, was not an "oncoming vehicle" or "oncoming driver" to the car approaching him from New York Avenue.

The statutory prohibition on the use of high beams applies only when there is an "oncoming vehicle" operated by an "oncoming driver."  N.J.S.A. 39:3-60.  The statute does not state that high beams may be used only on rural or unlit suburban roads at night, but not on a seemingly well-lit deserted city street at 3:30 a.m.  There may be some benefit to a driver with impaired vision at night using high beams on a deserted city street.  We cannot say one way or the other based on the record before us.  In any event, we cannot add a qualification to the statute that the Legislature pointedly omitted.  We cannot ignore the clear language of the statute or rewrite it to expand the restrictions on the use of high beams.  If there are to be further restrictions on the use of high beams, the directive must come from the Legislature.

Officer Cohen testified that at 3:30 a.m., no vehicles were traveling on either New York Avenue or Adams Street, other than the car in which defendant was traveling.  No vehicle was "nearing," "approaching," or "moving forward upon" the car

16

carrying defendant, and therefore the "glaring rays" of the high beams from that car were "not projected into the eyes of [an] oncoming driver."  See N.J.S.A. 39:3-60.

Accordingly, the driver of the subject car was not in violation of the high-beam statute based on Officer Cohen's testimony.  We conclude, moreover, that the high-beam statute is unambiguous in its language and meaning to both the public and police.  We reject the State's argument that an unoccupied police vehicle parked on a perpendicular street and a police officer on foot, collectively or individually, count as an "oncoming" vehicle under the statute.  We also do not find the State's argument to be an objectively reasonable interpretation of the statute.  Therefore, Officer Cohen did not have a reasonable and articulable suspicion to believe that the subject car was operating in violation of the statute.  See Puzio, supra, 379 N.J. Super. at 380 (concluding that vehicle "stop was unwarranted because the officer, who misunderstood the meaning of a statute, did not have an objectively reasonable basis for believing that defendant had committed a motor vehicle offense").

Because we determine that Officer Cohen's mistake of law was not objectively reasonable, we need not address the issue dealt with in Heien v. North Carolina, __ U.S. __, 135 S. Ct. 530, 190 L. Ed. 2d 475 (2014).

17

In *Heien*, the United States Supreme Court held that, under the Fourth Amendment, the requisite suspicion necessary for the police to make a stop for a motor-vehicle violation may be based on an objectively reasonable mistake of law. *Id.* at __, 135 *S. Ct.* at 540, 190 *L. Ed.* 2d at 486-87. In that case, a police officer stopped a vehicle and issued a ticket because one of its rear brake lights was not functioning. *Id.* at __, 135 *S. Ct.* at 534, 190 *L. Ed.* 2d at 480. The applicable North Carolina statute, however, allowed a driver to operate a vehicle with only one working stop lamp, and thus the stop was based on the officer's mistaken understanding of the law. *See ibid.* Unlike the present case, the North Carolina statute lacked clarity and was susceptible to two reasonable interpretations. *See id.* at __, 135 *S. Ct.* at 540, 190 *L. Ed.* 2d at 486-87. Ultimately, the Supreme Court found that the officer's belief that a "faulty right brake light was a violation of North Carolina law" was objectively reasonable. *Id.* at __, 135 *S. Ct.* at 540, 190 *L. Ed.* 2d at 487.

Because the facts before us do not present a motor-vehicle stop based on an objectively reasonable mistake of law, we do not determine here whether such a mistake, which may serve as a basis for reasonable suspicion for a motor-vehicle stop under the Fourth Amendment, would render a search unreasonable under Article I, Paragraph 7 of the New Jersey Constitution.

18

Ordinarily, we do not reach constitutional issues that are not joined and are extraneous to deciding a case. See State v. Pomianek, 221 N.J. 66, 90-91 (2015).

Additionally, Officer Cohen did not have a reasonable and articulable suspicion to stop the subject car because he has encountered stolen cars using high beams. That generalization, standing alone, would justify the stop of any car using high beams at nighttime in an urban setting. The suspicion necessary to justify a stop must not only be reasonable, but also particularized. See Stovall, supra, 170 N.J. at 356-57 ("A police officer may conduct an investigatory stop if, based on the totality of the circumstances, the officer had a reasonable and particularized suspicion to believe that an individual has just engaged in, or was about to engage in, criminal activity." (citing Terry v. Ohio, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880, 20 L. Ed. 2d 889, 906 (1968))). The car that Officer Cohen observed traveling on New York Avenue was "driving [at] normal speed" and there was "nothing out of the ordinary" about it, other than the use of its high beams. Officer Cohen, moreover, had not received a dispatch that a stolen vehicle was being operated in the area.

Accordingly, Officer Cohen did not have a reasonable, articulable, and particularized suspicion for making the stop under the Federal or State Constitution.

19

IV.

The State alternatively argues that Officer Cohen had a justifiable basis for stopping the subject car under the community-caretaking exception to the warrant requirement of the Fourth Amendment and Article I, Paragraph 7 of our State Constitution.

The community-caretaking doctrine represents a narrow exception to the warrant requirement. State v. Vargas, 213 N.J. 301, 324 (2013). The State bears the burden of showing that the "seizure" of the car and its occupants falls within the community-caretaking exception. Id. at 314. "The community-caretaking doctrine recognizes that police officers provide 'a wide range of social services' outside of their traditional law enforcement and criminal investigatory roles." State v. Edmonds, 211 N.J. 117, 141 (2012) (quoting State v. Bogan, 200 N.J. 61, 73 (2009)); see also Cady v. Dombrowski, 413 U.S. 433, 441, 93 S. Ct. 2523, 2528, 37 L. Ed. 2d 706, 714-15 (1973) (describing community-caretaking functions as police activities "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute"). In their community-caretaker role, police officers, who act in an objectively reasonable manner, may check on the welfare or safety of a citizen who appears in need of help on the roadway without securing a warrant or offending the

20

Constitution.  See State v. Diloreto, 180 N.J. 264, 276 (2004).

Police officers who have an objectively reasonable basis to believe that a driver may be impaired or suffering a medical emergency may stop the vehicle for the purpose of making a welfare check and rendering aid, if necessary.  In State v. Goetaski, 209 N.J. Super. 362, 364-65 (App. Div.), certif. denied, 104 N.J. 458 (1986), the community-caretaking doctrine justified a state trooper stopping a car that was driving on the shoulder of a road for one-tenth of a mile with its left-turn signal blinking at 4:00 a.m.  Based on his observations, the trooper had an objectively reasonable basis to believe that something was "wrong" with the driver and that a welfare check was appropriate.  Id. at 365-66; see also State v. Washington, 296 N.J. Super. 569, 572 (App. Div. 1997) (finding that, pursuant to community-caretaking doctrine, police officer had objectively reasonable basis to stop car operating at slow speed and weaving within its lane of travel at 12:20 a.m., because behavior indicated that something was wrong with driver or vehicle or both, and that potential safety hazard existed); State v. Martinez, 260 N.J. Super. 75, 76-78 (App. Div. 1992) (finding that state trooper acted in objectively reasonable manner in stopping vehicle that was moving "at a snail's pace" -- less than 10 m.p.h. -- around 2:00 a.m. in residential area because "[s]uch abnormal conduct suggests . . . something might

21

be wrong" with driver or vehicle).  The police do not have to wait until harm is caused to the driver or a pedestrian or other motorist before acting.

Unlike Goetaski, Martinez, and Washington, the evidence here -- according to the trial court -- did not suggest that the driver of the car was "impaired" or that the vehicle had a "problem."  The trial court determined that the reason for the stop was the alleged violation of the high-beam statute.

We do not question that a police officer conducting an investigation on the street can ask and even instruct a driver to dim high beams if the brightness of the lights is obstructing or impairing the officer's ability to perform certain tasks.  Certainly, a police officer could order motorists to dim their high beams while passing through an area where construction workers are fixing a roadway.  Police officers acting in their community-caretaking roles can take such reasonable steps to ensure public safety in conformity with our Federal and State Constitutions.

Here, however, Officer Cohen did not signal to the driver to dim her high beams because they were interfering with his mission, which was waiting for a tow truck to take away an unregistered vehicle.  Rather, he effectuated a motor-vehicle stop under the objectively unreasonable belief that the driver was in violation of the high-beam statute.

22

Finding that the motor-vehicle stop was not justified and that the subsequent seizure of the handgun (and the hollow-nose bullets and large-capacity magazine) were the fruits of a violation of the Fourth Amendment and its state constitutional counterpart, the trial court suppressed the evidence.  We conclude that those factual findings are supported by sufficient credible evidence in the record.  See Elders, supra, 192 N.J. at 243.

V.

For the reasons expressed, we affirm the judgment of the Appellate Division, which upheld the trial court's suppression order.


CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, and SOLOMON join in JUSTICE ALBIN'S opinion.
JUDGE CUFF (temporarily assigned) did not participate.

23