**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5318-14T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

BRYANT I. THOMPSON, a/k/a
THOMPSON BRYANT,

    Defendant-Appellant.

_____

Submitted May 3, 2017 — Decided June 23, 2017

Before Judges Accurso, Manahan and Lisa.

On appeal from Superior Court of New Jersey,
Law Division, Cumberland County, Indictment
No. 12-01-0061.

Joseph E. Krakora, Public Defender, attorney
for appellant (Stefan Van Jura, Deputy
Public Defender II, of counsel and on the
brief; Jodie Van Wert, Designated Counsel,
on the brief).

Christopher S. Porrino, Attorney General,
attorney for respondent (Sarah E. Ross,
Deputy Attorney General, of counsel and on
the brief).

PER CURIAM

Following the denial of his motion to suppress evidence seized in a warrantless search, defendant Bryant I. Thompson pled guilty to third-degree possession of cocaine, N.J.S.A. 2C:35-10a(1), and was sentenced in accordance with a negotiated agreement to five years' special probation conditioned on his successful completion of the drug court program. Defendant appeals from the denial of his motion to suppress the drugs found in his car. He contends the officer's belief, in 2011, that N.J.S.A. 39:3-66 required the car to have more than two operating brake lights was an unreasonable mistake of law. Defendant asserts the stop, which was based on a broken third brake light, was thus invalid. Because we agree that at the time of the stop, N.J.S.A. 39:3-66 unambiguously required cars to have only two functioning brake lights, one on each side, we reverse the denial of defendant's suppression motion.

At the suppression hearing, the arresting officer testified he was on patrol in Vineland on September 22, 2011, when he "noticed [defendant's] third brake light was out, the one in the middle of the back windshield." When the officer "got up close enough," he also "could see that [defendant] had an object hanging from his rearview mirror." Asked if he could recall what the object was, the officer testified he "believed it was a Christmas tree air freshener."

The officer pulled defendant over and approached the driver's side of the car to request defendant's credentials. According to the officer, his attention was drawn to defendant's left hand as defendant reached across his body toward his right pocket. Looking into defendant's lap, the officer saw a clear plastic bag of what appeared to be marijuana, which defendant was trying to conceal with his cell phone. The officer asked defendant to step out of the car and arrested him. Another officer searched defendant and discovered cocaine in a pocket of his jeans.

On cross-examination, the officer was forced to concede he did not note what it was he saw hanging from defendant's mirror in his report of the stop. He further admitted the object was also not identified in the return of the search warrant he subsequently obtained for defendant's car.

Defendant testified at the suppression hearing. He claimed he was driving his grandmother's car, and the object hanging from the rearview mirror was her handicap placard. Although admitting he had a cell phone in his lap, he claimed the marijuana was hidden beneath his seat, out of view of the officer. He testified he was "not sure" whether his third brake light was out.

After listening to that testimony, the judge placed his findings on the record. The judge found that while on patrol, the officer observed "Mr. Thompson's vehicle pass him . . . and, observe[d], at that point in time, that one of the brake lights was not working on the back of the car Mr. Thompson was operating, which appears to . . . be Mr. Thompson's grandmother's car." The judge found the officer "says that when he does get behind [defendant's] motor vehicle, at that point, for the first time, [the officer] notices something hanging from the rearview mirror." The judge continued:

> He testified that [he] believed that this — today, that it was an air freshener. But, Mr. Thompson indicates that it was a handicap parking placard that belonged to his grandmother. But, in any event, it's not that it matters, there's apparently something hanging, from all accounts, from the rearview mirror, as well.
>
> . . . .
>
> Mr. Thompson took the stand. He testified . . . pretty consistent with everything that [the officer] had said.
>
> . . . .
>
> I find that, for the most part, the testimony of the two was pretty consistent, except for that one critical period where [the officer] indicates that he . . . saw the marijuana on Mr. Thompson's lap; and, Mr. Thompson indicates it was under the seat, and out of plain view.

However, I find Mr. Thompson's testimony, that was otherwise credible, to be not credible as to that particular series of events. He was not clear; he was stumbling. And, I believe that [the officer's] testimony was credible in that regard. Also, I believe that Mr. Thompson's testimony, where he said he was arrested for the marijuana, when he got out of the car, to be consistent with exactly what happened, according to [the officer].

So, based upon those factual findings, I do believe that the plain view exception sustains the officer's search of Mr. Thompson and his arrest. And, his subsequent search, incident to arrest, wherein the cocaine was found.

Defendant appeals, raising the following issues:

POINT I

THE OFFICER DID NOT HAVE AN OBJECTIVELY REASONABLE BASIS FOR BELIEVING THAT DEFENDANT HAD COMMITTED MOTOR VEHICLE VIOLATIONS, THEREFORE THE TRAFFIC STOP WAS UNCONSTITUTIONAL AND EVIDENCE SEIZED AS A FRUIT OF THE STOP SHOULD BE SUPPRESSED AND THE CONVICTION REVERSED.

A. In 2011, N.J.S.A. 39:3-66 Did Not Require A Vehicle To Have More Than Two Stop Lights.

B. N.J.S.A. 39:3-74 prohibits only those objects hanging from a rearview mirror that unduly interfere with the driver's vision.

C. Neither of the officer's purported reasons provided an objectively reasonable basis for the traffic stop.

POINT II

THE COURT MISTAKENLY PREMISED ITS
CREDIBILITY FINDINGS ON TESTIMONY NOT IN
THE RECORD.

Our standard of review on a motion to suppress is well established. We are obligated to uphold the factual findings underpinning the trial court's decision "so long as those findings are supported by sufficient credible evidence in the record." State v. Gamble, 218 N.J. 412, 424 (2014). Deference "is required because those findings 'are substantially influenced by [an] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" Id. at 424-25 (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). Our review of the trial court's application of the law to the facts, of course, is plenary. State v. Hubbard, 222 N.J. 249, 263 (2015).

In 2011 at the time of this stop, N.J.S.A. 39:3-61(a) required every motor vehicle to

> be equipped on the front with at least 2
> headlamps, an equal number at each side, and
> with 2 turn signals, one on each side; and
> on the rear with 2 tail lamps, 2 stop lamps,
> 2 turn signals and 2 reflectors, one of each
> at each side; except that a passenger
> vehicle manufactured before July 2, 1954,
> and registered in this State may be equipped
> with one stop lamp, one reflector and one

> tail lamp and is not required to be equipped with turn signals.[1]

N.J.S.A. 39:3-66 required that "[a]ll lamps, reflectors and other illuminating devices" required by Article 3 are to "be kept clean and in good working order."

Defendant maintains the language of N.J.S.A. 39:3-61(a) was "plain and unambiguous," in requiring passenger cars to have only two brake lights at the time he was stopped, and that the officer's erroneous reading rendered the stop unlawful in accord with our decision in State v. Puzio, 379 N.J. Super. 378, 380 (App. Div. 2005).[2]

---

[1] The statute was amended effective March 1, 2014 to substitute, "'two or more stop lamps, as prescribed by section 2 of P.L. 2013, c. 230 (C.39:3-66.3)' for '2 stop lamps' in the first sentence." N.J.S.A. 39:3-66.3 is a new statute, effective the same date, which is specific to stoplights. The statute provides, in pertinent part, that "[e]very motor vehicle, other than a motorcycle, shall be equipped on the rear with at least two stoplights, one at each side of the vertical centerline at the same height and as far apart as practical," and that "[a]ll passenger automobiles manufactured on or after September 1, 1985, shall, in addition, be equipped with a high-mounted rear stoplight on the vertical centerline."

[2] Although defendant challenged the stop's legality at the suppression hearing, cross-examining the officer about his reasons for the stop, defendant did not raise the mistake of law issue in the trial court. The State has not defended on that basis, however, instead urging that we take up the issue and follow Heien. Heien v. North Carolina, 574 U.S. ___, 135 S. Ct. 530, 190 L. Ed. 2d 475 (2014). We thus conclude the Supreme Court's admonition in State v. Witt, 223 N.J. 409, 419 (2015), against addressing a defense argument first raised in this court at the risk of unfairly prejudicing the State, does not apply.

In Puzio, we held that an officer who misunderstood the meaning of a statute did not have an objectively reasonable basis for believing a defendant had violated the law. Id. at 380. More specifically, we found an officer's "entirely erroneous reading" of a motor vehicle law to be utterly unlike the more usual circumstance where "the officer correctly understands the statute but arguably misinterprets the facts" of whether a violation had occurred. Id. at 382.

In the latter, more usual case, our courts uphold stops even when the officer's testimony will not support a violation of the law on which the stop was premised beyond a reasonable doubt, because the officer need only have a reasonable and articulable suspicion of a motor vehicle violation for a stop. See State v. Locurto, 157 N.J. 463, 470 (1999). So, for example, if the motor vehicle law requires a car to have two working brake lights, a stop based on the officer's testimony that she saw only one working light will be upheld, even if the State cannot prove at trial that one of the lights was broken. All the State needs to establish is that the officer entertained a reasonable belief that a traffic law was violated. Puzio, supra, 379 N.J. Super. at 383.

Upholding a stop where the officer has misinterpreted a clearly written statute, however, is different. An officer who

mistakenly believes a car needs three operating brake lights when the law requires only two, lacks an objective basis for stopping a car with only two working brake lights. As we explained in Puzio,

> [i]f officers were permitted to stop vehicles where it is objectively determined that there is no legal basis for their action, "the potential for abuse of traffic infractions as pretext for effecting stops seems boundless and the costs to privacy rights excessive." [United States v. Lopez-Valdez, 178 F.3d 282, 289 (5th Cir. 1999).] We cannot countenance an officer's interference with personal liberty based upon an entirely erroneous understanding of the law.
>
> [379 N.J. Super. at 384.]

The State argues that because N.J.S.A. 39:3-66 requires "that 'all' illuminating lights be in 'good working order,'" the officer had an objectively reasonable basis for stopping defendant when he noticed defendant's third brake light was out. But the State neglects a key phrase appearing between the words it quotes from N.J.S.A. 39:3-66. The statute provides that "[a]ll lamps, reflectors and other illuminating devices required by this article shall be kept clean and in good working order." (Emphasis added). As N.J.S.A. 39:3-61(a) in 2011 required passenger cars to have only two rear brake lights, it is plain that N.J.S.A. 39:3-66 did not require defendant to keep his

third brake light "in good working order" and thus provided no basis for the stop.

The State maintains, however, that even assuming the officer's

> interpretation of N.J.S.A. 39:3-66 was
> incorrect, and, as it was later learned,
> there was actually no reasonable suspicion
> to believe that defendant had violated this
> motor-vehicle offense, the stop was still
> lawful because . . . [the officer's]
> interpretation of the tail light statute was
> based on an objectively reasonable mistake
> of law.

We disagree.

The State relies for its argument on the United States Supreme Court's decision in Heien v. North Carolina, 574 U.S. ___, ___, 135 S. Ct. 530, 539, 190 L. Ed. 2d 475, 486 (2014), in which the Court held that the Fourth Amendment is not violated when an officer makes a traffic stop based on an objectively reasonable mistake of law. But Heien is of no avail to the State here, because the officer's misreading of N.J.S.A. 39:3-61(a) or 39:3-66 cannot be characterized as reasonable.

As to brake lights, there is no ambiguity in either statute. Prior to the amendment of Title 39 to require "a high-mounted rear stoplight on the vertical centerline" for all passenger cars manufactured on or after September 1, 1985, N.J.S.A. 39:3-61(a) required "[e]very motor vehicle . . . be

10

equipped . . . on the rear with 2 tail lamps, 2 stop lamps, 2 turn signals and 2 reflectors, one of each at each side," and N.J.S.A. 39:3-66 required those lamps to "be kept clean and in good working order."  The language of both statutes is clear and "susceptible to only one interpretation," making their meaning self-evident.  See In re Passaic Cnty. Utils. Auth., 164 N.J. 270, 299 (2000).  Because the officer's conflicting interpretation, that Title 39 required defendant's car to have three operating brake lights, is not a plausible one, we cannot say his mistake on that score was reasonable.  See State v. Scriven, 226 N.J. 20, 36-38 (2016) (finding car stop invalid based on officer's objectively unreasonable mistake of law regarding the high beam statute).

After the briefing in this matter was complete, the State brought to our attention, pursuant to Rule 2:6-11(d), our decision in State v. Sutherland, 445 N.J. Super. 358 (App. Div.), appeal granted, 228 N.J. 246 (2016), addressing the validity of a car stop based on a broken tail light.  Although noting that N.J.S.A. 39:3-61(a) and 39:3-66 provide "that two tail lamps are required and they must be kept in good working order," we nevertheless upheld a stop "because one of [the car's] four tail lights was not illuminated," and questioned the

continuing vitality of <u>Puzio</u> in light of <u>Heien</u>.  <u>Sutherland</u>,

<u>supra</u>, 445 <u>N.J. Super.</u> at 364-68.

Although <u>Sutherland</u> addressed tail lamps and not brake

lights, we do not subscribe to its view that <u>N.J.S.A.</u> 39:3-61(a)

and 39:3-66 are rendered ambiguous by <u>N.J.S.A.</u> 39:3-61(l)

(permitting a motorist to avoid violation by repairing a broken

lamp before moving the car) and <u>N.J.S.A.</u> 39:3-48(b) and (d)

(addressing visibility of car lights and lamps).  445 <u>N.J.</u>

<u>Super.</u> at 368-69.  More important, two months after <u>Sutherland</u>

was decided, the Supreme Court affirmed the continued vitality

of <u>Puzio</u> in <u>Scriven</u>.  <u>Scriven</u>, <u>supra</u>, 226 <u>N.J.</u> at 36.[3]

We follow <u>Scriven</u>, in holding that an officer's mistaken

interpretation of a clear and unambiguous statute, here, the

former version of <u>N.J.S.A.</u> 39:3-61(a), and <u>N.J.S.A.</u> 39:3-66,

cannot provide the officer with a reasonable and articulable

suspicion that the driver has violated the law.  Like the Court

in <u>Scriven</u>, our conclusion, that the officer's mistake of law

was not objectively reasonable, relieves us of the need to

consider whether an objectively reasonable mistake of law

provides reasonable suspicion for a car stop under Article I,

---

[3] The Court subsequently granted leave to appeal in <u>Sutherland</u>,
and the matter remains pending.

Paragraph 7 of the New Jersey Constitution, as it does under the Fourth Amendment. See 226 N.J. at 36-37.

The State's alternative arguments, that the stop could be justified under the community caretaking exception or based on the object hanging from defendant's rearview mirror, require only brief comment.

As the Court reiterated in Scriven, the community caretaking doctrine "represents a narrow exception to the warrant requirement," permitting a police officer having an objectively reasonable basis for believing a driver "impaired or suffering a medical emergency [to] stop the vehicle for the purpose of making a welfare check and rendering aid, if necessary." Id. at 38-39. The exception grew out of the United States Supreme Court's observation that local police officers frequently investigate car accidents "and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." Cady v. Dombrowski, 413 U.S. 433, 441, 93 S. Ct. 2523, 2528, 37 L. Ed. 2d 706, 714-15 (1973).

The testimony of the officer here made clear he stopped defendant for the purpose of enforcing the motor vehicle laws, not to render emergency aid. Nothing in the record supports

that defendant was driving in a manner suggesting he was impaired. And although the inoperability of a redundant, third brake light, might perhaps suggest some "problem" with defendant's car, it could not realistically present the threat to public safety required for application of the community caretaking exception to the warrant requirement. See Scriven, supra, 226 N.J. at 38-40; see also State v. Robinson, ___ N.J. ___, ___ (2017) (slip op. at 35) (rejecting application of the doctrine in context of a car search when "no potential threat to any person's safety").

As for the object hanging from defendant's mirror, N.J.S.A. 39:3-74 provides, in pertinent part, that "[n]o person shall drive any vehicle so constructed, equipped or loaded as to unduly interfere with the driver's vision to the front and to the sides." We held in State v. Barrow, 408 N.J. Super. 509, 523 (App. Div.), certif. denied, 200 N.J. 547 (2009), that the statute required the officer conducting the stop "to provide articulable facts showing that he or she reasonably believed that an object hanging from a rearview mirror obstructed the driver's view."

Here, the officer never testified that the object he saw obstructed defendant's view in any manner. The officer told the court he believed the object was a Christmas tree air freshener.

Defendant claimed it was his grandmother's handicap parking placard. The judge did not resolve the discrepancy, being satisfied there was "apparently something hanging, from all accounts, from the rearview mirror."

But as it is hardly self-evident that either a single Christmas tree air freshener or a handicap parking placard would "unduly interfere with the driver's vision to the front and to the sides," we think it evident the State failed to carry its burden on this point. See id. at 517-19. Accordingly, we conclude the State failed to establish the officer had a reasonable and articulable suspicion that defendant had violated N.J.S.A. 39:3-74 so as to justify the stop.

Because the State could not demonstrate the officer had a reasonable and articulable suspicion for stopping defendant, we reverse the denial of his motion to suppress the drugs found in his car as the fruits of the constitutional violation.

Reversed, and remanded for further proceedings not inconsistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION