**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2195-19

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

AHLONZO S. MILLER,

    Defendant-Appellant.

_____

Submitted January 19, 2021 – Decided March 8, 2021

Before Judges Sabatino and Currier.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 18-04-0435.

Law Offices of Fetky & Petty, LLC, attorneys for appellant (Jonathan M. Petty, of counsel and on the brief).

Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney for respondent (Monica do Outeiro, Assistant Prosecutor, of counsel and on the brief; Katrina Koerner, Legal Assistant, on the brief).

PER CURIAM

Defendant Ahlonzo Miller appeals from the April 5, 2019 order denying his motion to suppress evidence seized following a stop of his vehicle. We affirm.

We derive the facts from testimony presented at the suppression hearing. On January 19, 2018, Belmar police officer Lawrence Kelly and Detective Michael Campbell were patrolling the area near the Marina View Towers, an area known to police for narcotics activity. Campbell was driving an unmarked vehicle; Kelly was in a marked patrol car.

At approximately 5:59 p.m., Campbell radioed Kelly he had observed a "suspicious white pickup truck" run a stop sign located at the intersection of 11th and Railroad Avenues. Campbell then saw the truck turn left onto Railroad Avenue and park for three to five minutes. The truck then "headed north on Railroad Avenue, up to a stop sign, then made a left on 10th Avenue . . . going westbound."

Kelly turned onto 10th Avenue and began to follow the truck. He observed it make a "right off of 10th Avenue onto Railroad Avenue without signaling[.]" According to Kelly, it appeared the vehicle was circling the block around Marina View Towers.

After observing the motor vehicle violation, Kelly initiated a motor vehicle stop by activating his lights and sirens. The driver, identified as defendant, pulled over and Kelly approached the truck. Defendant provided his license and registration upon request. Thereafter, Campbell arrived at the scene and joined the stop.

When Kelly asked defendant where he was going, defendant replied he was "just getting off of work and heading home to Lake Como." Defendant told Kelly his vehicle was a work truck and did not belong to him. Kelly noted that defendant "began to get nervous" and "seemed very confused." Kelly testified that defendant's answers were delayed, as if he had to think about them.

Kelly asked defendant if he knew anyone who lived in Marina View Towers; defendant replied that he did not. Defendant stated he was circling the Towers because he was looking at papers; however, he could not produce these papers upon Kelly's request. Defendant repeatedly looked down at his hands in his lap, which were not visible to Kelly due to the height of the truck.

Because of defendant's nervous behavior and hesitant and confusing answers, along with his repeated gaze towards his lap, Kelly became concerned for his safety. He asked defendant if there was anything in the truck he should

3

know about, to which defendant replied, "I ain't saying anything." Kelly then asked defendant to get out of the vehicle.

As defendant did so, Kelly observed "a big bulge coming out of [defendant's] left pocket." When Kelly asked defendant about the bulge, defendant turned away from the officers so they could no longer see the bulge and replied "I ain't saying nothing." Kelly instructed defendant to put his hands on the truck. Defendant refused to follow the instruction and the officers had to place defendant's hands on the truck. Kelly performed a pat-down of the exterior of defendant's clothes. Kelly did not manipulate the bulge or look at it while performing the pat-down.

When Kelly felt the bulge in defendant's pocket, he "[i]mmediately" recognized it as packaged heroin. Kelly testified he recognized the package as heroin because of his extensive experience in heroin investigations coupled with his training.

Thereafter, Kelly handcuffed defendant and removed the package from defendant's pants. The package contained 100 wax folds of heroin. Defendant also had three cell phones and $2047 in cash on his person. A search of the truck yielded an additional cell phone and $150 in cash.

4

Defendant was charged with third-degree possession of a controlled dangerous substance (CDS), N.J.S.A. 2C:35-10(a)(1); third-degree possession of CDS with intent to distribute, N.J.S.A. 2C:35-5(b)(3); and third-degree possession of CDS with intent to distribute on or within 1000 feet of school property, N.J.S.A. 2C:35-7. He later moved to suppress the evidence found during the search of his person and the truck.

At the suppression hearing, defendant argued that the evidence seized from him and the vehicle should be suppressed because it was discovered during an improper motor vehicle stop. He asserted that Kelly did not have reasonable suspicion that defendant was engaged in criminal activity and the police improperly prolonged the traffic stop by asking questions in the hope of creating a reason to justify further police action. Lastly, defendant argued that Kelly did not stop the vehicle after the first alleged traffic infraction which indicated there was no actual reason to initiate a traffic stop.

Judge David F. Bauman denied the motion to suppress in a comprehensive April 12, 2019 oral decision. In finding Kelly's testimony credible, the judge noted Kelly observed defendant commit a motor vehicle infraction when he failed to signal before turning. Therefore, the officer had "a reasonable and

A-2195-19

articulable suspicion that a motor vehicle offense had been committed, thereby justifying his stop of . . . defendant."

Because the stop of defendant's vehicle was lawful, Judge Bauman reasoned the officers were entitled to conduct a routine inquiry and question defendant about the motor vehicle offense as well as defendant's route of travel and purpose. They also had the right to request defendant to get out of his vehicle.

In addition, the judge found the stop was not unduly prolonged and that it was reasonable in duration. He stated:

> When Patrolman Kelly asked defendant why he was circling the complex defendant told him he was just heading home. Defendant could not articulate a reason for circling and idling in front of the Marina View Towers, an area that the [o]fficers knew to be a known drug area.
>
> The State also asserts through the testimony of Patrolman Kelly whose testimony the [c]ourt found credible that . . . defendant became visibly nervous and continuously looked in the direction of his left which the [o]fficers could not see given the elevation of the vehicle.
>
> Based on the totality of the circumstances the [c]ourt finds that the [o]fficers had a reasonable suspicion to broaden the scope of the initial traffic stop, which they did by ultimately ordering . . . defendant out of the vehicle.

A-2195-19

> Therefore, . . . defendant's motion to suppress evidence based on the assertion the stop of the vehicle was improperly prolonged is denied.

Although defendant did not challenge the pat-down and subsequent search of his person and vehicle, Judge Bauman addressed those issues and determined they were properly executed. The judge noted that after defendant got out of the truck, Kelly noticed a bulge in defendant's pocket which defendant attempted to hide from him. The judge found Kelly had a "reasonable belief that . . . defendant was armed and dangerous[.]" And a pat-down was warranted. The judge further explained, "[W]hile conducting a lawful pat-down of . . . defendant Patrolman Kelly found an item that from his training and experience he immediately recognized to be evidence of a crime. Accordingly, he was authorized to seize the item which turned out to be a controlled dangerous substance."

After finding 100 folds of heroin, over $2000 in cash and three cell phones on defendant's person, the judge concluded that the officers "had a well-grounded suspicion that . . . defendant's vehicle was being used to facilitate narcotics sale[s]." Therefore, the search of the truck was lawful, and the evidence seized from it was properly obtained.

A-2195-19

Defendant pled guilty to the charges and was sentenced to an aggregate term of six years' incarceration, subject to a three-year parole disqualifier.

On appeal, defendant presents a sole issue for our consideration:

> THE COURT BELOW ERRED IN FINDING THAT PATROLMAN KELLY POSSESSED A REASONABLE AND ARTICULABLE SUSPICION THAT DEFENDANT WAS PRESENTLY ARMED AND DANGEROUS AND AS SUCH ALL EVIDENCE DERIVED FROM THE ILLEGAL [TERRY] FRISK SHOULD HAVE BEEN SUPPRESSED

A trial court's factual findings in a suppression hearing are afforded great deference. State v. Gonzales, 227 N.J. 77, 101 (2016) (citing State v. Hubbard, 222 N.J. 249, 262 (2015)). In reviewing a decision on a motion to suppress, we defer to the findings of fact and credibility determinations of the trial judge, recognizing that he or she has had an "opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Elders, 192 N.J. 224, 244 (2007) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). We will uphold the trial judge's decision so long as it is "supported by sufficient credible evidence" and not "so clearly mistaken 'that the interests of justice demand intervention and correction.'" State v. Scriven, 226 N.J. 20, 32-33 (2016) (quoting Elders, 192 N.J. at 243-44).

A-2195-19

Defendant argues the officers did not have a reasonable and articulable suspicion that he was armed and dangerous to permit a protective search. Therefore, the evidence seized as a result of the search should have been suppressed. We disagree and affirm substantially for the reasons set forth in Judge Bauman's well-reasoned decision. We add the following comments.

To conduct a protective search, an officer must have a "specific and particularized basis for an objectively reasonable suspicion that defendant was armed and dangerous." State v. Roach, 172 N.J. 19, 27 (2002). "The protective search exception to the warrant requirement was created to protect an officer's safety where there is reason to believe that a suspect is armed and dangerous." Ibid. (citing Terry v. Ohio, 392 U.S. 1, 26-27 (1968)). "The exception allows a law enforcement officer 'to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm.'" Ibid. (citing Terry, 392 U.S. at 23). "Specifically, the officer may conduct 'a carefully limited search of the outer clothing . . . in an attempt to discover weapons which might be used to assault him.'" Ibid. (alteration in original) (citing Terry, 392 U.S. at 30). "The search must, however, be 'confined in scope to an intrusion reasonably designed to discover' weapons that might be used to assault the police officer." Ibid. (citing Terry, 392 U.S. at 29). An

objective reasonable suspicion is based on "the totality of the circumstances." State v. Valentine, 134 N.J. 536, 532 (1994).

Here, Judge Bauman noted Kelly's testimony in which he described defendant as nervous and unable to answer routine questions. In addition, defendant repeatedly looked towards his lap. Because the officer could not see inside the truck or defendant's hands or what was in defendant's lap, Kelly became concerned for his safety. After Kelly ordered defendant out of the vehicle, he observed a bulge in defendant's pants which defendant attempted to hide from the officer. Defendant also refused to tell Kelly what the bulge was. Judge Bauman concluded that under the totality of the circumstances, Kelly had a reasonable belief that defendant was armed and dangerous. Given our deference to the trial judge's credibility determinations, we cannot disagree.

As a result, the seizure of the heroin was warranted. Kelly testified that as he patted the bulge in defendant's pocket, he immediately recognized it as packaged heroin. He was able to identity the narcotics because of his experience, training, and previous opportunities to observe and physically handle the substance. Therefore, under the plain feel doctrine, Kelly had the authority to seize the contraband from defendant. See State v. Evans, 235 N.J. 125, 138 (2018) (holding "[c]ontraband found during the course of a lawful pat

down may be seized without a warrant if the officer 'feels an object whose contour or mass makes its identity immediately apparent.'") (citation omitted).

We are satisfied Judge Bauman's denial of defendant's motion to suppress is supported by sufficient credible evidence in the record and the applicable law.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION