**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4074-16T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JOSEPH M. DOYLE,

    Defendant-Appellant.

_____

Submitted May 17, 2018 — Decided June 26, 2018

Before Judges Haas and Gooden Brown.

On appeal from Superior Court of New Jersey, Law Division, Burlington County, Indictment No. 16-05-0556.

Joseph E. Krakora, Public Defender, attorney for appellant (Michele E. Friedman, Assistant Deputy Public Defender, of counsel and the brief).

Scott A. Coffina, Burlington County Prosecutor, attorney for respondent (Nicole Handy, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

    Defendant Joseph Doyle appeals from an April 6, 2017 judgment of conviction for third-degree possession of cocaine with intent

to distribute, N.J.S.A. 2C:35-5(a)(1) and (b)(2). Defendant moved to suppress evidence seized without a warrant, which formed the evidential basis for the charge. After his motion was denied, defendant entered a negotiated guilty plea and was sentenced to a five-year term of special probation in drug court, with an alternative sentence of four years' imprisonment, with a one-year period of parole ineligibility, if defendant violated probation.

On appeal, as permitted under Rule 3:5-7(d), defendant challenges the denial of his suppression motion, raising the following single point for our consideration:

> THE STATE FAILED TO PRESENT COMPETENT EVIDENCE TO CORROBORATE ITS CLAIM THAT THE WIRETAP TEXT MESSAGES AND PHONE CALLS ON WHICH POLICE RELIED WERE OBJECTIVELY EMBEDDED WITH "DRUG CODE." WITHOUT THIS MISSING LINK, THE COURT COMMITTED REVERSIBLE ERROR IN FINDING THAT POLICE HAD REASONABLE SUSPICION TO STOP [DEFENDANT] IN CONNECTION WITH A NARCOTICS INVESTIGATION.

Having considered the argument and applicable law, we affirm.

After defendant filed his suppression motion, the parties agreed that no testimonial hearing was required pursuant to Rule 3:5-7(c); stipulated to the facts in their written submissions; and requested that the motion judge, Judge Philip E. Haines, review the police motor vehicle recording of the stop provided in

discovery. Accordingly, in his written decision rendered on January 17, 2017, Judge Haines made factual findings from the undisputed facts, which we incorporate by reference and summarize to lend context to the judge's decision.

Briefly, the Burlington County Guns, Gangs, and Narcotics Task Force (GGNTF) and the Drug Enforcement Agency (DEA) conducted an undercover investigation of Dante Fox, which led to an arranged drug transaction with Fox and a confidential source in September 2015; the issuance of a communications data warrant (CDW) for Fox's phone in October 2015; and the issuance of a wiretap order to intercept Fox' telephone communications for twenty days from December 14, 2015. As a result, police intercepted a number of telephone conversations and text messages they believed referred to drug vernacular for cocaine and drug transactions.

Two of the intercepted conversations, which occurred on December 15 and 16, 2015, involved a request between Fox and an individual later identified as defendant for "4 vizzles," which police believed was coded language for a drug transaction. In subsequent conversations on December 29 and 30, 2015, defendant arranged a time to meet Fox at Fox's house.

On the morning of December 30, 2015, police observed a man later identified as defendant enter Fox's home carrying a black backpack, exit ten minutes later, and drive off in a white Ford

Crown Victoria. One of the GGNTF officers conducted a motor vehicle stop and advised defendant he was being stopped for having tinted windows.[1] Thereafter, the officers removed defendant from the vehicle, handcuffed him, conducted a pat down, and placed him in the back seat of a police car. During the pat down, the officers removed $585 in currency from defendant's pockets.

Approximately one minute after the stop, a K-9 unit arrived at the scene to perform an exterior sniff of defendant's vehicle. The K-9 officer gave a positive hit, indicating the presence of narcotics at the trunk and passenger side of the Crown Victoria. Thereafter, the officers transported defendant and his vehicle to police headquarters, after which a search warrant was obtained for the vehicle. The resulting search of the trunk of the vehicle uncovered a black backpack containing one ounce of cocaine.

In upholding the stop of defendant's vehicle, Judge Haines initially recognized that defendant "was stopped as a part of a GGNTF investigation, . . . a specialized unit with particularized knowledge about the drug trade." After acknowledging "the training and experience of the officers involved," and the propriety of the officers "consider[ing] the conversation that took place between

---

[1]  Before the motion judge and on appeal, the State abandoned any argument that the stop was justified based on a violation of the tinted-windows statute, N.J.S.A. 39:3-74.

. . . [d]efendant and . . . Fox several weeks prior to the challenged car stop," Judge Haines concluded that "the police had a 'particularized suspicion' that [defendant] was 'engaged in wrongdoing' which justified the stop of his motor vehicle." To support his decision, the judge relied "on the information obtained from the wiretap, from the [CDW], the surveillance of [defendant] arriving at and departing from the home of . . . Fox, and the specialized knowledge of the [GGNTF]."[2] The judge entered a memorializing order and this appeal followed.[3]

On appeal, defendant "exclusively" challenges the judge's ruling that the officers possessed the requisite suspicion to stop the car, arguing "the record is devoid of proof corroborating [the] claim" that "the intercepted text messages and phone calls contained language which the officers reasonably and objectively believed to contain 'drug code.'" We disagree.

---

[2] The wiretap application, which was not challenged by defendant, detailed the affiant's extensive knowledge and experience "in all facets of narcotics investigations" while assigned to the GGNTF, as well as the suspected involvement in drug trafficking of defendant and his two brothers, described as associates of Fox, whose "Cadillac [was] registered to [defendant]."

[3] Because the judge found "nothing in the dash camera video nor in the recited facts that could lead the officers to believe that [defendant] was armed and dangerous," he determined that "the frisk of his outer clothing" and "entry into [his] pockets" were unlawful and suppressed the seizure of $585 in currency from defendant's person. That ruling is not challenged on appeal.

Our review of a motion judge's decision on a motion to suppress is limited. State v. Robinson, 200 N.J. 1, 15 (2009). We review the judge's factual findings in a suppression hearing with great deference, State v. Gonzales, 227 N.J. 77, 101 (2016), and "must uphold the factual findings underlying the trial court's decision, provided that those findings are 'supported by sufficient credible evidence in the record.'" State v. Boone, 232 N.J. 417, 425-26 (2017) (quoting State v. Scriven, 226 N.J. 20, 40 (2016)). We "disregard those findings only when a trial court's findings of fact are clearly mistaken." State v. Hubbard, 222 N.J. 249, 262 (2015). We owe no deference, however, to the trial court's legal conclusions or interpretation of the legal consequences that flow from established facts. Id. at 263. Our review in that regard is de novo. State v. Watts, 223 N.J. 503, 516 (2015).

It is well settled that the police may lawfully stop a motor vehicle and detain the occupants on less than probable cause in order to investigate suspicious conduct. State v. Stovall, 170 N.J. 346, 356 (2002). Such an "investigatory stop," also known as a Terry[4] stop, is characterized by a detention in which the person approached by a police officer would not reasonably feel

---

[4] Terry v. Ohio, 392 U.S. 1 (1968).

free to leave, even though the encounter falls short of a formal arrest. Id. at 355-56. During a Terry motor vehicle stop, a police officer may detain an individual for a brief period, if the stop was "based on reasonable and articulable suspicion that an offense . . . has been or is being committed." State v. Carty, 170 N.J. 632, 639-40 (2002). Once a lawful stop is made, the subsequent reasonable detention of the occupant of the motor vehicle constitutes a permissible seizure. State v. Dickey, 152 N.J. 468, 475 (1998). The burden is on the State to show by a preponderance of the evidence that it possessed sufficient information to give rise to the required level of suspicion. State v. Pineiro, 181 N.J. 13, 19-20 (2004).

"The principal components of a determination of reasonable suspicion . . . [are] the events which occurred leading up to the stop . . . , and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to a reasonable suspicion . . . ." Stovall, 170 N.J. at 357 (alteration in original) (quoting Ornelas v. United States, 517 U.S. 690, 696 (1996)). Determining whether a reasonable and articulable suspicion exists depends upon the totality of the circumstances. Pineiro, 181 N.J. at 22. In evaluating the totality of the circumstances surrounding the Terry stop, a reviewing court must balance "the State's interest in

effective law enforcement against the individual's right to be protected from unwarranted and/or overbearing police intrusions." State v. Davis, 104 N.J. 490, 504 (1986).

As our Supreme Court observed in Davis,

> such encounters are justified only if the evidence, when interpreted in an objectively reasonable manner, shows that the encounter was preceded by activity that would lead a reasonable police officer to have an articulable suspicion that criminal activity had occurred or would shortly occur. No mathematical formula exists for deciding whether the totality of circumstances provided the officer with an articulable or particularized suspicion that the individual in question was involved in criminal activity. Such a determination can be made only through a sensitive appraisal of the circumstances in each case.

> [Id. at 505.]

In reviewing the totality of the circumstances, we are also required to "give weight to 'the officer's knowledge and experience' as well as 'rational inferences that could be drawn from the facts objectively and reasonably viewed in light of the officer's expertise.'" State v. Citarella, 154 N.J. 272, 279 (1998) (quoting State v. Arthur, 149 N.J. 1, 10-11 (1997)). "The fact that purely innocent connotations can be ascribed to a person's actions does not mean that an officer cannot base a finding of reasonable suspicion on those actions as long as 'a

reasonable person would find the actions are consistent with guilt.'"  Id. at 279-80 (quoting Arthur, 149 N.J. at 11).

Applying these principles, we discern no basis to disturb Judge Haines' reasoned decision upholding the motor vehicle stop that led to the seizure of a large quantity of cocaine found in the black backpack in the trunk of defendant's vehicle.  Contrary to defendant's contention, the totality of all of the circumstances viewed through the prism of the specialized knowledge and experience of the members of the GGNTF in conducting narcotics investigations clearly provided a constitutionally permissible reasonable suspicion that defendant was engaging in criminal activity with Fox to justify the motor vehicle stop.  We are satisfied, as was Judge Haines, that the full mosaic of the circumstances provided the "reasonable and articulable suspicion that an offense . . . has been or is being committed" necessary to effectuate a motor vehicle Terry stop.  Carty, 170 N.J. at 639-40.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION