**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1126-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ALEX N. SPIROPOULOS,

     Defendant-Appellant.

_____

Submitted February 1, 2021 – Decided February 19, 2021

Before Judges Rothstadt and Mayer.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Indictment No. 17-09-0819.

Joseph E. Krakora, Public Defender, attorney for appellant (Molly O'Donnell Meng, Assistant Deputy Public Defender, of counsel and on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Regina M. Oberholzer, Deputy Attorney General, of counsel and on the brief; Rebecca W. Yin admitted pursuant to Rule 1:21-3(b), on the brief).

PER CURIAM

Defendant appeals from an October 15, 2019 judgment of conviction after pleading guilty to fourth-degree operation of a motor vehicle with a suspended license, N.J.S.A. 2C:40-26(b).  He focuses his argument on the denial of his pre-trial motion to suppress evidence.  We affirm.

The facts are taken from the testimony presented during the June 26, 2018 evidentiary hearing on defendant's suppression motion.

On May 24, 2017, Sergeant Patrick Harden, a patrol sergeant with the Riverdale Police Department, was in his patrol car.  Around 4:00 in the morning, he drove past an active commercial railroad line and saw a car stuck on the railroad tracks.  He also spotted a tow truck near the railroad tracks.  Sergeant Harden asked the tow truck operator what happened, and the operator responded he was called by the driver of the car.[1]  Harden then asked if the tow truck operator knew the whereabouts of the car's driver, and the operator replied defendant was still inside the car.

Because he was concerned about defendant remaining in a car stuck on active railroad tracks, Sergeant Harden walked to the car for a "welfare check." The officer approached the driver's side of the car and saw defendant "sleeping in the seat."  He knocked on the driver's window several times to wake

---

[1]  The driver was subsequently identified as defendant.

A-1126-19

defendant. When defendant rolled down his window, Sergeant Harden asked how the car came to rest on the railroad tracks. Defendant explained he tried to make a K-turn and got stuck on the tracks. Harden then requested defendant's driving credentials.

While speaking to defendant, Sergeant Harden noticed a "strong odor" of alcohol on defendant's breath. Based on the smell of alcohol, the officer asked defendant to exit the car in order to perform field sobriety tests. Defendant did "not do very well" on the field tests. Harden also administered the Alcotest, and defendant registered a 0.08 percent blood alcohol reading. After failing the tests, Sergeant Harden arrested defendant for driving while intoxicated.[2]

Prior to trial, defendant moved to suppress evidence discovered at the scene by Sergeant Harden. Defendant argued the officer was not performing a community-caretaking function when he approached defendant's disabled car. Because Sergeant Harden never asked if he was injured or needed medical assistance, defendant asserted the officer was not performing a welfare check but instead conducting an investigatory traffic stop. Defendant claimed the

---

[2] Defendant was charged with various motor vehicle violations in addition to the charge of driving while intoxicated.

A-1126-19

officer's removing him from the car and performing field sobriety tests violated his Fourth Amendment rights.

The judge conducted an evidentiary hearing. At the hearing, the State offered the testimony of Sergeant Harden and the video from the motor vehicle recorder (MVR) in his patrol car.

The judge denied defendant's suppression motion. He found the officer's "demeanor and presentation . . . to be credible." Additionally, the judge concluded the video recording from the MVR corroborated Sergeant Harden's testimony.

Based on the situation confronting Sergeant Harden, the judge held the officer did not violate defendant's Fourth Amendment rights. The judge explained the situation "wasn't something you see every day, nor something that a law enforcement officer could walk away from." The judge determined the officer encountered a situation where defendant's car was "stuck, not able to be moved by its own power[,]" and the vehicle was on "active railroad tracks, so that mean[t] a train [could] come through and strike the vehicle at some point." He further stated the officer finding defendant asleep in a car stuck on an active railroad track presented circumstances "sufficient to remove a person from the vehicle while it remain[ed] on the railroad track." The judge expressly ruled

4

Sergeant Harden did not conduct "a traffic stop" because "[t]he officer didn't have to do anything to stop the car."

Given the unusual circumstances, the judge determined Sergeant Harden was "within his prerogative to approach a stopped car[,]" and "the circumstances made it appropriate and reasonable for him to find out what the condition of the driver was . . . and remove him from the car while it remain[ed] on the railroad tracks." The judge explained, "Putting together the circumstances, the unusual situation, . . . [the] operation of the car, the odor of alcohol, [and] the sleeping, [Sergeant Harden] sensibly asked [defendant] to do field sobriety tests and ultimately placed him under arrest for suspicion of drunk driving." Consequently, the judge found "absolutely nothing unreasonable in what the officer did in the sequence of events" and held Sergeant Harden did not violate defendant's Fourth Amendment rights.

Based on the denial of his suppression motion, defendant pleaded guilty to driving while suspended, preserving the right to appeal the denial of his motion to suppress. In exchange for defendant's guilty plea, the State agreed to dismiss three motor vehicle summonses and recommend a sentence of one-year imprisonment with six-months of parole ineligibility and mandatory minimum

fines.  On October 15, 2019, the judge sentenced defendant in accordance with the negotiated plea.

On appeal, defendant raises the following argument:

> DEFENDANT WAS UNLAWFULLY ORDERED OUT OF HIS CAR WITHOUT REASONABLE SUSPICION.  THEREFORE, THE MOTION TO SUPPRESS SHOULD HAVE BEEN GRANTED.

In reviewing a grant or denial of a motion to suppress, we defer to the factual findings of the trial court if those findings are supported by sufficient evidence in the record.  State v. Hubbard, 222 N.J. 249, 262 (2015).  We defer to a trial judge's factual findings because those findings "are often influenced by matters such as observations of character and demeanor of the witnesses and common human experience that are not transmitted by the record."  State v. Locurto, 157 N.J. 463, 474 (1999) (citing State v. Jamerson, 153 N.J. 318, 341 (1998)).  Those factual findings will be disturbed only if they are "so clearly mistaken 'that the interests of justice demand intervention and correction.'"  State v. Gamble, 218 N.J. 412, 425 (2014) (quoting State v. Elders, 192 N.J. 224, 244 (2007)).

"Both the United States Constitution and the New Jersey Constitution guarantee an individual's right to be secure against unreasonable searches or seizures."  State v. Minitee, 210 N.J. 307, 318 (2012).  Where a search or seizure

is conducted absent a valid search warrant, the State bears the burden of proving the search falls within one of the recognized exceptions to the warrant requirement. State v. Shaw, 213 N.J. 398, 409 (2012).

The community-caretaking doctrine is an exception to the Fourth Amendment's warrant requirement. State v. Vargas, 213 N.J. 301, 314 (2013). The doctrine is based on "a wide range of social services" provided by the police to ensure the safety and welfare of the public. State v. Edmonds, 211 N.J. 117, 141 (2012). Under the community-caretaking doctrine, "[c]ourts have allowed warrantless searches . . . when police officers have acted not in the law enforcement or criminal investigatory role, but rather in a community [-]caretaking function." State v. Bogan, 200 N.J. 61, 73 (2009) (citing Cady v. Dombrowski, 413 U.S. 433, 439-48 (1973)). Community-caretaking by police officers includes "aiding those in danger of harm, preserving property, and 'create[ing] and maintain[ing] a feeling of security in the community.'" Ibid. (citations omitted).

As our Supreme Court explained, "In their community-caretaker role, police officers, who act in an objectively reasonable manner, may check on the welfare or safety of a citizen who appears in need of help on the roadway without securing a warrant or offending the Constitution." State v. Scriven, 226 N.J. 20,

38-39 (2016) (citing <u>State v. Diloreto</u>, 180 N.J. 264, 276 (2004)). Under such circumstances, "police do not have to wait until harm is caused to the driver … before acting." <u>Id.</u> at 39.

Here, the judge properly found the officer had an objectively reasonable basis to believe defendant required help and posed a risk to himself and property because he was asleep in a disabled car that was stuck on an active railroad track. We concur with the judge's assessment that had Sergeant Harden left the scene, such action would have been a "dereliction of duty." Based on the unique factual circumstances confronting Sergeant Harden, coupled with the judge's credibility findings, there is sufficient evidence in the record supporting the warrantless search and denying defendant's motion to suppress.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1126-19