**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3183-22

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JAIKEEM L. JOHNSON,

     Defendant-Appellant.

_____

> Argued April 3, 2025 – Decided April 21, 2025
>
> Before Judges Natali, Walcott-Henderson, and Vinci.
>
> On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 18-07-0447.
>
> Brian P. Keenan, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer N. Sellitti, Public Defender, attorney; Brian P. Keenan, of counsel and on the brief).
>
> Milton S. Leibowitz, Assistant Prosecutor, argued the cause for respondent (James O. Tansey, First Assistant Prosecutor of Union County, designated prosecutor for purpose of this appeal, attorney; Milton S. Leibowitz, of counsel and on the brief).

PER CURIAM

Defendant Jaikeem L. Johnson appeals from the November 3, 3022 order: (1) granting his motion for reconsideration of a prior order denying his motion to suppress; and (2) reaffirming the denial of his suppression motion. He also appeals from the March 29, 2023 judgment of conviction entered after he pleaded guilty to second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b)(1). We affirm.

We summarize the facts adduced during the hearings on defendant's motions to suppress and for reconsideration. On June 27, 2017, at approximately 8:00 p.m., Officer Michael Nicolas of the Elizabeth Police Department was on patrol in an unmarked patrol vehicle with his partner, Officer Alexander Gonzalez. While traveling northbound on Second Street, they observed a red Dodge Charger traveling southbound. Officer Nicolas observed two occupants in the front seats wearing black ski masks.

As the officers passed the vehicle at approximately fifteen to twenty miles per hour, Officer Nicolas observed "the front and rear -- all the other windows except for the windshield were tinted heavily." At the suppression hearing, Officer Nicolas testified:

> [Prosecutor]: [W]ere you able to see clearly into the car?

[Officer Nicolas]: Yes. I was. The sun was setting behind us, so the sun was illuminating the front of the [Charger] . . . .

[Prosecutor]: And you said the two occupants were wearing black ski masks. . . . [W]here were these two occupants sitting?

[Officer Nicolas]: One was the driver[,] and one was the front occupant.

[Prosecutor]: Okay. And what happened as you approached the [Charger]?

[Officer Nicolas]: As we approached it . . . we saw them wearing ski masks. As we passed it, I observed that the front and rear -- all the other windows except for the windshield were tinted heavily.

[Prosecutor]: And when you passed the [Charger], how close . . . distance-wise did you pass it?

[Officer Nicolas]: It would be an approximation. Three feet?

          . . . .

[Prosecutor]: While you passed the car, were you able to see inside the car?

[Officer Nicolas]: No. I was not.
[Prosecutor]: So[,] were you able to see how many occupants in the [Charger] there were in total?

[Officer Nicolas]: I do not know how many occupants were in, minus the two that I originally saw through the windshield.

A-3183-22

In response to questioning by the court, he testified:

> [Court]: Did you testif[y] that [the Charger] had a tinted windshield, or the windshield was not tinted?
>
> [Officer Nicolas]: The windshield was not tinted.
>
> [Court]: Okay. But you testified the front windows were tinted. Correct?
>
> [Officer Nicolas]: That is correct, Your Honor.
>
> [Court]: And the rear windows were tinted[?]
>
> [Officer Nicolas]: Correct.

Officer Gonzalez also testified that as the officers were attempting "to confirm the number of occupants in the vehicle, [they] then noticed that the front driver[-]side windows were tinted." The officers "were not able to see through the side windows of the car . . . because the car's windows on the side and the back were heavily tinted." According to Officer Gonzalez, "you have the back windshield that was tinted very heavily. You have the side windows that were tinted very heavily. So[,] the only thing[s] via the front windshield that [he] was absolutely able to see clearly were the driver and the front seat passenger."

The officers "decided to conduct a motor vehicle stop . . . for the tinted windows." Officer Nicolas made a U-turn and positioned his patrol vehicle behind the Charger, which made an immediate left turn from Bond Street onto

4

Community Lane and almost collided with a vehicle heading southbound. Officer Nicolas activated his lights and siren. The Charger pulled into a parking space and stopped.

As the officers exited their patrol vehicle, "the driver . . . , front passenger, and rear passenger side doors all opened at the same time," and "three [B]lack males wearing black-colored shirts and blue jeans" exited the Charger. Officer Gonzalez instructed them to stop and "get back in the vehicle." They looked back at the officers, slammed the doors, and "took off running." Officer Gonzalez chased the passengers by foot while Officer Nicolas pursued the driver, later identified as defendant, in the patrol vehicle.

An off-duty police officer in full uniform was walking nearby when he observed Officer Nicolas pursuing defendant in the patrol vehicle and began to chase defendant on foot. The off-duty officer apprehended defendant. Officer Nicolas performed a search of defendant incident to arrest and placed him in the back of the patrol vehicle. Officer Nicolas recovered a dark-colored ski mask from defendant's pocket and two sets of keys defendant had thrown on the ground during the pursuit.

While Officer Nicolas was chasing defendant, Officer Gonzalez was pursuing the front passenger, later identified as co-defendant James Gilford.

5

Officer Gonzalez eventually apprehended Gilford and placed him under arrest. Officer Gonzalez searched him and recovered two clear Ziplock bags containing marijuana. He walked Gilford back to the area where the Charger was parked. Officer Nicolas had already returned to the scene in his patrol vehicle with defendant secured in the back. Two other officers were also on the scene.

When Officer Nicolas returned, the Charger's doors and windows were closed. There was a large crowd forming around the Charger. Officer Nicolas could not see into the back passenger compartment through the front windshield. He proceeded to open the driver's door "to clear the back of the vehicle, which [he] could[ not] see through the windows." He testified it was necessary to clear the vehicle because

> [o]ne, [he] was unable to see originally how many occupants were in the vehicle. Two, the third party, [who] had ran from the vehicle[] was still on the run or at large at this time, so [he] wanted to confirm that there w[ere] no other parties inside of the vehicle[,] . . . for [officers'] safety and for everybody's safety in the neighborhood.

"Upon opening the door and clearing the back seat for any other parties in the vehicle, [he] immediately observed a black and gray handgun [in] the driver's door panel." "It was in the driver's door panel. So if you were to open the door,

A-3183-22

there would be a slot and that[ is] where the handgun was placed." It was immediately apparent to him it was a handgun.

Officer Nicolas secured the handgun, which was loaded, and cleared the weapon. The officers then opened the front passenger door and recovered a handgun in the passenger door panel slot. They recovered a third handgun in the rear right passenger door panel slot, marijuana in the central console, and a black ski mask on the rear seat. The third individual officers observed exiting the Charger was never apprehended.

Defendant was indicted for second-degree unlawful possession of a handgun without a permit, N.J.S.A. 2C:39-5(b)(1); fourth-degree possession of hollow nose bullets, N.J.S.A. 2C:39-3(f)(1); two counts of third-degree receiving stolen property, N.J.S.A. 2C:20-7(a); fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a)(2); and fourth-degree credit card theft, N.J.S.A. 2C:21-6(c)(1).

Defendant filed a motion to suppress arguing the motor vehicle stop was unlawful and the officers were not permitted to conduct a protective sweep of the vehicle. Following the evidentiary hearing, the suppression court entered an order denying the motion supported by an oral opinion. The court found Officers Nicolas and Gonzalez credible. It found the officers had reasonable

and articulable suspicion to conduct the motor vehicle stop because they "observed tinted windows on [the] motor vehicle" and "you can[ not] have tinting material on the front passenger windows."

The suppression court also concluded Officer Nicolas's warrantless search of the passenger compartment was valid under the protective sweep exception to the warrant requirement. It found Officer Nicolas "could[ not] see into the vehicle because of the illegal tinted windows" and "had a reasonable and articulable suspicion to believe . . . there may be someone in [the] vehicle who may pose a threat to his safety . . . or to the members of the public standing there around [the Charger]." "[T]here was somebody at large and [the officers] had just seen two individuals in the front of the vehicle with ski masks on."

The court found the "sweep was limited in scope" as Officer Nicolas simply

> [stuck] his head through the pane of the front doorway area into the vehicle and look[ed] toward the back seat. He went no further than he needed to go to see if someone was back there. . . .
>
> He proceeded out of the vehicle from where he was leaning into the vehicle and then saw in plain view this weapon. He was in an area . . . he had the lawful right to be in at the time he observed the weapon in plain view because the officer had a legitimate purpose for opening the door, looking in the vehicle.

8

Following the seizure of the first handgun, "the officers had the right to continue the protective sweep procedures" because there was a crowd that had formed around the Charger, and a "third individual [was] still at large." The officers also "had probable cause . . . to believe there were other weapons and/or contraband within the vehicle." Thus, the seizure of the other two handguns, marijuana, and ski masks were permissible warrantless seizures.

Defendant moved for reconsideration based on our Supreme Court's decision in State v. Smith, 251 N.J. 244, 253 (2022), holding "reasonable and articulable suspicion of a tinted windows violation arises only when a vehicle's front windshield or front side windows are so darkly tinted that police cannot clearly see people or articles within the car." He argued the officers' testimony at the suppression hearing did not satisfy the standard enunciated in Smith. The court granted defendant's motion for reconsideration and conducted an evidentiary hearing.

The reconsideration court reviewed the officers' testimony at the suppression hearing and photographs of the Charger. Defendant called the individual who owned the Charger at the time of the underlying offenses, Laquanda Griggs, as a witness. She testified she was not aware the windows of the vehicle were tinted and "[y]ou would not have any difficulty looking inside"

through the front window. She denied telling a detective in 2017 the windows were "medium tinted." The State produced a recording of the June 29, 2017, interview in which Griggs told the detective the windows were "[m]edium tinted and not dark."

On November 3, 2023, the reconsideration court entered an order denying defendant's motion to suppress supported by an oral opinion. The court found Griggs was not credible because

> [s]he was rude, defensive[,] and aggressive. She clearly did not want to answer any of the attorneys' questions . . . and had to be instructed twice by the [c]ourt to listen to the questions carefully and do her best to respond. . . . Griggs's testimony about not having provided certain answers to [the detective] was not believable and that was before counsel listened to the recording of her statement in which she clearly told the detective . . . the windows were . . . "medium tinted and not dark."

The court found:

> [T]he photos of the front driver[-]side window of the Charger to me appears to be tinted although not completely non-transparent[,] . . . this is a situation where the [officers] did not approach a parked car or a car stopped at a red light. This is a situation where both cars were moving. It was 8[:00] p.m., still sunny but the sun was setting. [The suppression court] found credible the testimony of . . . both officers, that they could not see the number of occupants in the car as the two vehicles passed each other. They were side-by-side or parallel as they headed in opposite

10

directions . . . . [E]ven Griggs described the windows as having a medium tint.

Whether light, medium[,] or heavy is accurate, this [c]ourt accepts the . . . testimony of both [officers] that as they passed the Charger with the sun setting, . . . they could not see into the Charger through the front driver[-]side window. The photos[] and [Griggs]'s . . . testimony does not change that determination. It is somewhat in the eye of the beholder. It is depending upon the circumstances. This is a circumstance that[ is] unusual. The cars are driving past each other. . . . [I]t[ is] a short time, it[ is] not five minutes, might not have even been five seconds. . . . We[ are] not talking about a lengthy period of time. The [officer] said [he] could[ not] see clearly through, [he] could[ not] tell how many people were in the car. And the <u>Smith</u> case says they have to clearly be able to see into the car.

On December 12, 2022, defendant pleaded guilty to second-degree unlawful possession of a handgun in exchange for the State's agreement to recommend a sentence of three years in prison, subject to a one-year period of parole ineligibility pursuant to a Graves Act waiver, N.J.S.A. 2C:43-6.2. On March 19, 2023, defendant was sentenced in accordance with the plea agreement.

On appeal, defendant raises the following points for our consideration.

THE SUPPRESSION AND RECONSIDERATION MOTION COURTS ERRED IN DENYING SUPPRESSION OF PHYSICAL EVIDENCE.

A.    Suppression Should Have Been Granted Because the Officers Had No Reasonable Articulable Basis to Stop the Motor Vehicle for a Violation of N.J.S.A. 39:3-74 Based on Their Observation of Window Tinting on The Front Side Windows.

B.    The Motion Court Erred in Denying Suppression Because the State Failed to Establish a Reasonable Suspicion that Anyone in the Car was Armed and Dangerous to Justify a Protective Sweep Without Reliance on the Officers' Specious Designation of the Neighborhood as a "High Crime Area."

C.    The Motion Court Erred in Denying Suppression Because the Police Exceeded the Narrow Boundaries of a Protective Sweep.

In reviewing a motion to suppress, we defer to the factual and credibility findings of the trial court "so long as those findings are supported by sufficient credible evidence in the record." State v. Handy, 206 N.J. 39, 44 (2011) (quoting State v. Elders, 192 N.J. 224, 243 (2007)).  Deference is afforded "because the 'findings of the trial judge . . . are substantially influenced by [their] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'"  State v. Reece, 222 N.J. 154, 166 (2015)

12                                                    A-3183-22

(quoting State v. Locurto, 157 N.J. 463, 471 (1999)). "An appellate court should disregard those findings only when a trial court's findings of fact are clearly mistaken." State v. Hubbard, 222 N.J. 249, 262 (2015) (citing State v. Johnson, 42 N.J. 146, 162 (1964)). The legal conclusions of the trial court "are reviewed de novo." Id. at 263.

We affirm substantially for the reasons set forth in the court's oral opinions. We are satisfied the reconsideration court correctly determined the State met the standard set forth by our Supreme Court in Smith, and established the officers had a reasonable and articulable basis to conduct the motor vehicle stop pursuant to N.J.S.A. 39:3-74.

"The Fourth Amendment of the Federal Constitution and Article I, Paragraph 7 of the New Jersey Constitution guarantee the right to be free from unreasonable searches and seizures." State v. Nelson, 237 N.J. 540, 552 (2019) (citing U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7). "Our jurisprudence under both constitutional provisions expresses a preference that police officers secure a warrant before they execute a search." State v. Witt, 223 N.J. 409, 422 (2015) (citing State v. Frankel, 179 N.J. 586, 597-98 (2004)). "Warrantless searches are permissible only if 'justified by one of the "few specifically established and well-delineated exceptions" to the warrant requirement.'" Ibid. (quoting

Frankel, 179 N.J. at 598). "[T]he State bears the burden of proving by a preponderance of the evidence that [the] warrantless search or seizure" falls within an exception. Elders, 192 N.J. at 246.

The exception at issue in this case is an investigatory stop of a motor vehicle. "A lawful roadside stop by a police officer constitutes a seizure under both the Federal and New Jersey Constitutions." State v. Dunbar, 229 N.J. 521, 532 (2017) (citing Arizona v. Johnson, 555 U.S. 323, 333 (2009) and State v. Scriven, 226 N.J. 20, 33 (2016)). "To be lawful, an automobile stop 'must be based on reasonable and articulable suspicion that an offense, including a minor traffic offense, has been or is being committed.'" State v. Bacome, 228 N.J. 94, 103 (2017) (quoting State v. Carty, 170 N.J. 632, 639-40, modified on other grounds, 174 N.J. 351 (2002)); see also State v. Bernokeits, 423 N.J. Super. 365, 370 (App. Div. 2011) ("A motor vehic[le] violation, no matter how minor, justifies a stop without any reasonable suspicion that the motorist has committed a crime or other unlawful act." (citing Delaware v. Prouse, 440 U.S. 648, 663 (1979))).

The reasonable suspicion standard requires "some minimal level of objective justification for making the stop." State v. Nishina, 175 N.J. 502, 511 (2003) (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989)). "[R]aw,

inchoate suspicion grounded in speculation cannot be the basis for a valid stop." Scriven, 226 N.J. at 34. Here, the motor vehicle stop was conducted based on an alleged violation of N.J.S.A. 39:3-74, which provides, in relevant part, "[n]o person shall drive any motor vehicle with any . . . non-transparent material upon the front windshield . . . or front side windows of such vehicle."

In State v. Smith, our Supreme Court held "reasonable and articulable suspicion of a tinted windows violation arises only when a vehicle's front windshield or front side windows are so darkly tinted that police cannot clearly see people or articles within the car." 251 N.J. at 253. "In order to establish a reasonable suspicion of a tinted windows violation under N.J.S.A. 39:3-74, the State will . . . need to present evidence that tinting on the front windshield or front side windows inhibited officers' ability to clearly see the vehicle's occupants or articles inside." Id. at 266.

Based on the credible testimony of Officers Nicolas and Gonzalez, the reconsideration court found they were not able to clearly see the occupants of the vehicle through the front driver-side window of the Charger. Contrary to defendant's argument, the officers testified repeatedly they could not see through the heavily tinted front driver-side window. The officers' testimony was corroborated by the court's review of the photographs of the tinted windows

15

presented at the hearing. The court found incredible Griggs's testimony the windows were not tinted.

There is no basis for us to disturb the court's factual findings and legal conclusions. Because the State presented evidence the tinting on the front side window "inhibited officers' ability to clearly see the vehicle's occupants," it established reasonable and articulable suspicion for the motor vehicle stop. See ibid.

The suppression court correctly concluded it was permissible for Officer Nicolas to conduct a protective sweep of the passenger compartment of the vehicle. The protective sweep doctrine is a recognized exception to the warrant requirement. The exception derives from the United States Supreme Court's holding in Terry v. Ohio, which authorizes the limited intrusion of a police "stop and frisk" of a pedestrian where there is reasonable suspicion that the individual may have engaged in criminal activity. 392 U.S. 1, 31 (1968).

In Michigan v. Long, the United States Supreme Court applied the protective sweep exception in an automobile setting. 463 U.S. 1032, 1049 (1983). There, the Court authorized a limited search of a vehicle's passenger area for purposes of officer safety. Id. at 1050. A "protective sweep" should be restricted to those areas where a weapon could be hidden or placed if an officer

"possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officers in believing that the suspect is dangerous and . . . may gain immediate control of weapons." Id. at 1049 (footnote omitted) (quoting Terry, 392 U.S. at 21).

In State v. Lund, our Supreme Court adopted the test for vehicular protective sweeps that had been articulated in Long. 119 N.J. 35, 48-50 (1990). Hence, the coterminous federal and state constitutional standard for a valid protective sweep is whether the State demonstrates "specific and articulable facts that, considered with the rational inferences from those facts, warrant a belief that an individual in the vehicle is dangerous and that [they] 'may gain immediate control of weapons.'" State v. Robinson, 228 N.J. 529, 547 (2017) (quoting Long, 463 U.S. at 1049).

The police may perform a warrantless protective sweep of a vehicle's passenger compartment where the totality of circumstances support "a reasonable suspicion that a driver or passenger 'is dangerous and may gain immediate access to weapons.'" Id. at 534 (quoting State v. Gamble, 218 N.J. 412, 432 (2014)). However, "[t]he protective sweep exception . . . does not turn solely on the potential presence of a weapon in a vehicle." Id. at 548. It also

17

addresses "the imminent danger to police when a driver or passenger . . . may be in a position to evade or overpower the officers at the scene." Ibid.

We are satisfied the suppression court correctly determined it was permissible for Officer Nicolas to conduct a protective sweep of the passenger compartment. Based on the officers' credible testimony, the court found Officer Nicolas had a reasonable suspicion there could have been individuals in the vehicle who posed a danger to the officers and the crowd of people that formed around the scene.

The officers previously observed defendant and Gilford wearing ski masks in late-July while driving the Charger and they and another individual subsequently fled the scene and attempted to elude apprehension. The officers had a reasonable basis to believe criminal activity was afoot and there may have been weapons in the vehicle based on these observations. Officer Nicolas was not able to see into the rear of the passenger compartment to determine if it was unoccupied. He was aware there was a third occupant of the vehicle who was at large and could have reentered the vehicle after he and Officer Gonzalez gave chase. In addition, the officers did not know if all the occupants exited the vehicle when the three individuals initially fled. Because they could not see into the vehicle to determine it was empty and secure, they were permitted to conduct

a protective sweep of the passenger compartment for the safety of the officers and others in the area.

Officer Nicolas's seizure of the handgun he saw in the driver-side door panel was permissible pursuant to the plain view exception. "Plain view is one of the recognized exceptions to the warrant requirement." State v. Johnson, 476 N.J. Super. 1, 20 (App. Div. 2023). Under the plain view exception, a warrantless seizure of evidence is proper where the State proves by a preponderance of the evidence that a police officer is "lawfully . . . in the area where [they] observed and seized the incriminating item or contraband, and it [is] . . . immediately apparent that the seized item is evidence of a crime." State v. Williams, 254 N.J. 8, 45 (2023) (emphasis omitted) (quoting State v. Gonzales, 227 N.J. 77, 101 (2016)). Officer Nicolas was lawfully in the passenger compartment when he saw the handgun and it was immediately apparent to him the handgun constituted evidence of a crime.

Defendant's claim Officer Nicolas exceeded the permissible scope of the protective sweep by opening the front door instead of a rear door lacks merit. There is no reason he needed to conduct the protective sweep of the passenger compartment starting with the rear doors. The scope of the search did not extend beyond a cursory examination of the passenger compartment. Moreover, had he

started with the rear doors, he would have discovered the handgun in the rear door compartment.

To the extent we have not addressed any remaining arguments, it is because they lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

A-3183-22